## TOWN OF WINDHAM

v.

### Joseph LaPOINTE.

Supreme Judicial Court of Maine.

July 31, 1973.

Wilson, Steinfeld, Murrell & Lane, by Henry Steinfeld, Charles A. Lane, Portland, for plaintiff.

Ranger & McTeague, by Orville T. Ranger, Brunswick, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, and ARCHIBALD, JJ.

DUFRESNE, Chief Justice.

On or about June 1, 1971 the appellant, Joseph LaPointe, moved a house trailer onto a private lot located in the Town of Windham, intending to make his home therein. On July 8, 1971 the Town of Windham initiated injunctive proceedings against Mr. LaPointe which resulted ultimately in an order permanently enjoining the occupation of the trailer for dwelling purposes and disallowing its maintenance on that plot of land in violation of the ordinance of the Town of Windham. The legal propriety of this order is the subject of this appeal, which we now sustain.

The ordinance reads as follows:

"An Ordinance Regulating House Trailers and House Trailer Parks in the Town of Windham, Maine

"The following specific regulations are hereby required for establishing house trailer parks and the use of house trailers in the Town of Windham:

(a) After passage of this ordinance, house trailers will be restricted to approved trailer parks.

(b) House trailers now on location will be allowed to remain, but if moved, they cannot be reestablished except in approved trailer parks.

(c) No house trailer park shall be established in the Town of Windham unless it meets with the following requirements:

1. Adequate sanitation must be provided complying with all State laws.

2. Location to be approved by the Selectmen and the Planning Board.

3. It shall not become a nuisance to other dwellings.

4. It shall be at least one hundred feet from any highway in the town."

The appellant raises two contentions, 1) that the Town had no power to enact the ordinance, and 2) that, if it did have the power, it passed an ordinance which is unconstitutional.

The Town cites the case of Inhabitants of Windham v. Sprague, 1966, Me., 219 A. 2d 548 as controlling against the appellant's position. We disagree. This Court in *Sprague* expressly noted that, due to the stipulation of facts under which the controversial issue was submitted to the Court, no attack was being launched against the Enabling Act nor against the Ordinance enacted thereunder, and thus the parties and the Court were premising their consideration of the controversy on the presumption of constitutionality of both the Enabling Act and the Ordinance. The issue in *Sprague* only involved the construction of the ordinance respecting nonconforming uses. The validity of the ordinance was assumed and was not under attack.

It is undisputed from the record in the instant case that Mr. LaPointe made no attempt to comply with the provisions of the ordinance. He did not locate his house trailer in an approved trailer park, nor did he seek to establish a trailer park on his own private lot, the size of which does not appear, by obtaining the approval of the Selectmen of the Town of Windham and of the Planning Board. Furthermore, the parties at trial stipulated that the Town of Windham had no comprehensive zoning plan; thus the validity of the ordinance must be tested not as a "zoning" ordinance, but as a "police power" ordinance.

We note initially that the ordinance provides no definition of the terms "house trailer" and "house trailer park." Even though the Windham ordinance predates

the statutory definition of "house trailer" under 29 M.R.S.A. section 1, subsection 3–A (adopted by P.L. 1967, c. 245, section 2, subsection 3–A), the defendant's structure, described in the evidence as a house trailer placed on a permanent foundation, would come within the broad term of the ordinance and of the statutory definition, to wit: "a trailer or semitrailer which is designed, constructed and equipped as a dwelling place, living abode or sleeping place, either permanently or temporarily, and is equipped for use as a conveyance on streets and highways."

The parties do not dispute, and have assumed, the fact that the defendant's intended home retains its character as a "house trailer" even though it was placed on a permanent foundation. See, Wright v. Michaud, 1964, 160 Me. 164, 200 A.2d 543.

A "trailer park," on the other hand, according to Webster's Third New International Dictionary (1961), is "an area where house trailers are congregated." It is a place where space may be rented upon which to park trailers. Mercer v. Vinson, 1959, 85 Ariz. 280, 336 P.2d 854. The trailer park may accommodate on a temporary basis persons traveling about the country for recreational purposes by providing them with the necessary parking, sanitary and electrical facilities needed for the enjoyment of their house trailers, whilst other trailer parks are undoubtedly conducted as business ventures oriented toward the permanent lodging of a segment of the public who cannot afford the purchase of conventional housing accommodations. The trailer park concept, however, connotes multiple space areas for the parking of house trailers as opposed to the maintenance of a single trailer on an owner's plot of land.

The defendant claims the right to station a single house trailer on land that he owns; he does not contend for the establishment of a trailer park.

■ The defendant has standing to attack the constitutionality of the ordinance, even though he made no attempt to secure a permit to install his house trailer on his plot of land. Under the ordinance, such permit would have been denied, since the ordinance prohibits the establishment of a house trailer anywhere in Windham except in approved trailer parks. But, under such circumstances, the attack must be limited to the face of the ordinance. See, Staub v. City of Baxley, 1958, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302. If an ordinance is unconstitutional on its face and invalid, it is not necessary for a defendant to do a vain thing such as to apply for a permit which must be denied under all circumstances before attacking the ordinance which injuriously affects his right. See, Village of St. Johnsbury v. Aron, 1930, 103 Vt. 22, 151 A. 650. The interlocking structure of the Windham ordinance which restricts house trailers to approved trailer parks so affects the defendant's use of his property as to allow him to test on its face the constitutionality of the main portion of this two-pronged ordinance, including that part which sets the requirements for the establishment of trailer parks which he claims unconstitutional. He has shown that he is sufficiently aggrieved by the ordinance as to permit him to attack its constitutionality. See, LaFleur, Atty. Gen. v. Frost, 1951, 146 Me. 270, 276, 80 A.2d 407.

■ There is a presumption in favor of the validity of an ordinance passed in pursuance of statutory authority, and every presumption is to be made in favor of the constitutionality of such an ordinance, but such presumption is not absolute. Buck v. Kilgore, 1972, Me., 298 A.2d 107; Donahue v. City of Portland, 1940, 137 Me. 83, 86, 15 A.2d 287, 288. The burden rests upon the party attacking the constitutionality of an ordinance, and the standard of proof is by clear and irrefragable evidence that it infringes the paramount law. Buck v. Kilgore, supra.

This ordinance of the Town of Windham regulating house trailers and house trailer parks was passed pursuant to 30 M.R.S.A. § 2151, which authorizes munici-

palities[1] to enact police power ordinances for the purpose of [1A] "promoting the general welfare . . . and . . . providing for the public safety," also, for the purpose of [4] "regulating sanitation and parking facilities for trailers; . . . [and of ] requiring permits and establishing reasonable permit fees for all of the operations mentioned in this paragraph." And the Enabling Act further provides, for the express purpose of promoting the health, safety and general welfare of the public and of the occupants and users of buildings and other structures, that "any building, structure, trailer parking facility or equipment existing in violation of an ordinance authorized by this subsection is a nuisance." 30 M.R.S.A. § 2151 subd. 4, par. E (1).

The plaintiff Town claims the power to regulate house trailers through a police power ordinance, as distinguished from a zoning ordinance, from the general grant of power contained in 30 M.R.S.A. § 2151 (1)(A) and from the specific authority to regulate the sanitation and parking facilities of trailers. 30 M.R.S.A., § 2151 (4)(A).[2] Although the Enabling Act does not specifically mention house trailers, it is clear that the Legislature intended to subject them to regulation, since the power to regulate sanitation facilities for trailers would be practically meaningless if the Lawmakers did not have in mind trailers used for living quarters such as house trailers.

We need not repeat in this opinion the history of legislative authorizations for "police power" and "zoning" ordinances and their simultaneous but parallel courses of development to serve their respective but different purposes, as the same was elaborately detailed in Town of Waterboro v. Lessard, 1972, Me., 287 A.2d 126.

■■ A municipality in this State has no inherent police power. It may exercise only such powers as are expressly conferred upon it by the Legislature or as are necessarily implied from those expressly so conferred. Town of Conover v. Jolly, 1970, 277 N.C. 439, 177 S.E.2d 879; Squires v. Inhabitants of City of Augusta, 1959, 155 Me. 151, 153 A.2d 80.

In Inhabitants of Town of Frankfort v. Waldo Lumber Co., 1929, 128 Me. 1, at 4, 145 A. 241, at 242, this Court said:

"'A municipal corporation has no element of sovereignty. It is a mere local agency of the state, having no other powers than such as are clearly and unmistakably granted by the law-making power.'"

■ A town has no right to appropriate or interfere with private property, except so far as that right has been conferred by statute, either expressly or by necessary implication. Mitchell v. City of Rockland, 1858, 45 Me. 496. Private property rights are not absolute, however, but are subject to the implied condition that

---

1. 30 M.R.S.A. § 1901(6) "'Municipality' includes only cities and towns."

2. 30 M.R.S.A. § 2151. Police power ordinances.
"A municipality may enact police power ordinances for the following purposes:
1. General.
A. Promoting the general welfare; preventing disease and promoting health; providing for the public safety.
    *       *       *       *       *
4. Buildings, structures, trailers and equipment.
A. Regulating the design, construction materials and construction of new build-

ings and additions to and alterations of existing buildings; regulating the alteration, demolition, maintenance, repair, use, change of use, safety features, light, ventilation and sanitation facilities of all buildings; *regulating sanitation and parking facilities for trailers*; regulating the installation, alteration, maintenance, repair and use of all equipment in or connected to all buildings; requiring permits and establishing reasonable permit fees for all of the operations mentioned in this paragraph."

the property shall not be used for any purpose that injures or impairs the public health, morals, safety, order or welfare. If the use causes an actual and substantial injury or impairment of the public interest in any of its aspects above enumerated, a regulating or restraining statute, or an ordinance implementing such a statute and enacted pursuant to statutory authority, if itself reasonable and not merely arbitrary, and not violative of any constitutional limitation, is valid. York Harbor Village Corporation v. Libby, 1928, 126 Me. 537, at 540, 541, 140 A. 382.

Some courts in other jurisdictions have viewed the prohibition of house trailers at other than duly licensed trailer parks or camps in "police power" ordinances as a proper exercise of municipal legislative power under a general grant of police power from the Legislature and, also, as a reasonable exercise of such power, designed, as it is, to promote the general health, safety and welfare of the municipality by assuring that adequate provisions are made for drainage, sewerage facilities, water and lighting of trailers and facilitating a closer enforcement of the several mandated conditions in their use or operation. See, Napierkowski v. Township of Gloucester, 1959, 29 N.J. 481, 150 A.2d 481; Wyoming Tp. v. Herweyer, 1948, 321 Mich. 611, 33 N.W.2d 93. But see, City of Sparta v. Brenning, 1970, 45 Ill.2d 359, 259 N.E.2d 30.

The Enabling Act in the instant case, 30 M.R.S.A. § 2151(4)(A) specifically authorizes municipal police power ordinances "regulating sanitation and parking facilities for trailers." The use of such broad terms as "parking facilities for trailers," without specific mention of trailer parks or camps, would seem to indicate a general purpose on the part of the Legislature to subject to municipal control by police power ordinances any land use for parking of trailers, whether on single lots or in areas of multiple lots known as trailer parks or camps. If such was the intent of the Lawmakers, then the enactment of the refer-

ence ordinance by the Town of Windham in prohibiting absolutely the use of a single trailer for residence purposes upon any parcel of land within the Town except in approved trailer parks would seem to be within the scope of authority conferred by the Enabling Act.

In an era of inflationary purchase or rental prices respecting conventional housing accommodations and high financial costs, trailer living has become attractive to several million people in this country today and, for many, is their only hope of owning their own home. A house trailer, well constructed and equipped, connected with the public water, sewer and electric systems, cannot be deemed, per se, detrimental to the health, morals, comfort, safety, convenience and welfare of the people of town or city without regard to the nature and use of the surrounding properties. Town of Conover v. Jolly, supra. Furthermore, mobile home or trailer parks are legitimate businesses. High Meadows Park, Inc. v. City of Aurora, 1969, 112 Ill.App.2d 220, 250 N.E.2d 517. Such enterprises do not necessarily affect adversely the public peace or safety, nor are they per se a fire or health hazard. As such, they cannot be deemed nuisances per se. Ace Tire Co., Inc. v. Municipal Officers of Waterville, 1973, Me., 302 A.2d 90.

From the face of the ordinance, it is clear that the voting inhabitants of the Town of Windham intended, as part of a comprehensive plan of regulating house trailers within the town, to prohibit absolutely their location upon any parcel of land outside approved trailer parks and to regulate the location and establishment of trailer parks where trailers could be stationed. Both objectives were an integral and essential part of a single plan.

It is an elementary rule of statutory construction, and the same rule applies to ordinances, that the same statute may be in part constitutional and in part unconstitutional. State v. Webber, 1926, 125 Me. 319, 133 A. 738.

■ Rules of statutory and ordinance construction, however, designed to effect legislative intent, do recognize that partial unconstitutionality of a statute or ordinance does not necessarily result in tainting the whole legislation, even in the absence of a severability clause. Where it appears that the valid provisions would have been enacted, even if the invalid portion had been deleted, then the valid part may stand and the invalid may be rejected. McKenney v. Farnsworth, 1922, 121 Me. 450, 118 A. 237; LaFleur, Atty. Gen. v. Frost, 1951, 146 Me. 270, at 289, 80 A.2d 407.

■ On the other hand, when the legislative provisions are so related in substance and object that it is impossible to determine that the legislation would have been enacted except as an entirety, if one portion offends the Constitution, the whole must fall. Appeal of Sleeper, 1952, 147 Me. 302, 87 A.2d 115; Ross v. Hanson, 1967, Me., 227 A.2d 606; Opinion of the Justices, 1933, 132 Me. 502, at 505, 167 A. 174. We are satisfied that the inhabitants of the Town of Windham did not intend that portion of the ordinance prohibiting the use of a single house trailer for residence purposes upon parcels of land outside trailer parks should stand with the house trailer park provisions invalid.

Since we find the provisions of the ordinance relating to the establishment of house trailer parks unconstitutional, and this is dispositive of the appeal, we will assume, for the purposes of this case, that the Enabling Act is constitutional, and that the ordinance was within the scope of the powers delegated by the Act, whether general or specific.

The ordinance provides several requirements for the establishment of a house trailer park in the Town of Windham. The first stated prerequisite is that adequate sanitation must be provided complying with all State laws. This portion of the ordinance has no substantial value as such in the consideration of our present problem, because it is merely declaratory of existing applicable law. A second condition imposed by the ordinance is that the house trailer park shall not become a nuisance to other dwellings. Here again, this provision, couched as it is in terms of futurity, is of doubtful impact in resolving the question before us. If the intent was to subject house trailer parks to abatement proceedings should they create nuisance conditions after their establishment, such mandatory terms of the ordinance by themselves would add nothing to the judicial power to abate actual nuisances. Thirdly, the ordinance mandates that house trailer parks be at least one hundred feet from any highway in the town. In Town of Waterboro v. Lessard, 1972, Me., 287 A.2d 126, this Court ruled that an ordinance enacted under the police power Enabling Act (30 M.R.S.A. § 2151), which set side yard limitations for the location of structures was invalid and beyond the scope of the power conferred upon the town by section 2151. The Court ruled that the object of such an ordinance was to establish "building lines," an area of regulation not justified under the police power. Opinion of the Justices, 1925, 124 Me. 501, 510, 128 A. 181, 185. We do recognize that house trailer parks with their highly dense population may present a different problem than conventional residential districts. The greater number of children to be expected in such areas may create safety hazards for motorists and the children themselves if the park is too close to town highways. Whether the same legal conclusions reached in Town of Waterboro v. Lessard, supra, should apply to a police power ordinance which requires that a house trailer park be set back from any highway in the town at least one hundred feet, we need not decide, because the reference ordinance is constitutionally invalid for the other and last requirement with which we will deal presently.

Lastly, the ordinance requires, independently of the other three stated prerequisites, that no house trailer park shall be es-

tablished unless its location be approved by the Selectmen and the Planning Board. The ordinance, however, provides no standards whatsoever by which the Selectmen and the Planning Board are to be guided in reaching their decision to approve or disapprove the location of the trailer parks. The ordinance delegates to the Selectmen and the Planning Board an unbridled discretion in their decision, thus clothing such agencies with an unconstitutional power to discriminate in its enforcement.

A "police power" ordinance, like any other ordinance or statute which is in derogation of the common law, must be construed strictly. See, Forest City, Inc. v. Payson, 1968, Me., 239 A.2d 167; Toulouse v. Board of Zoning Adjustment, 1952, 147 Me. 387, 87 A.2d 670. The present ordinance unqualifiedly and unrestrictively requires the location of trailer parks to be approved by the Selectmen and the Planning Board. Such broad delegation of power breeds selectivity in the enforcement of the law. When no standards are provided to guide the discretion of the enforcement authority, the fact that the law might be applied in a discriminatory manner settles its unconstitutionality. "It is not what . . . ordinarily would be done under a statute, but what might be done under it, that determines whether it infringes upon the constitutional right of the citizen. *The constitution guards against the chances of infringement.*" (Emphasis supplied.) Bennett v. Davis, 1897, 90 Me. 102, at 105, 37 A. 864, at 865.

In Stucki v. Plavin, 1972, Me., 291 A.2d 508, we said:

"The governing rule, constitutionally mandated, may be simply stated as that delegating power to an administrative agency, the legislative body must spell out its policies in sufficient detail to furnish a guide which will enable those to whom the law is to be applied to reasonably determine their rights thereunder, and so that the determination of those rights will not be left to the purely arbitrary discretion of the administrator."

In Phillips Petroleum Co. v. Zoning Board of Appeals, 1970, Me., 260 A.2d 434, we said that "[t]he danger is that [even] broad policy statements unaccompanied by any specific standards will not effectively curtail the power to discriminate."

To the same effect, Kovack v. Licensing Board, City of Waterville, 1961, 157 Me. 411, 173 A.2d 554; Waterville Hotel Corp. v. Board of Zoning Appeals, 1968, Me., 241 A.2d 50.

That part of the ordinance which sets forth the prerequisites for the establishment of house trailer parks in the Town of Windham must fall, because it unconstitutionally delegates to the Selectmen and the Planning Board [3] an arbitrary power of approval of their location, and since the restriction of house trailers to approved trailer parks is an integral and essential part of the comprehensive planning undergirding the ordinance, this whole municipal legislation fails.

The entry will be

Appeal sustained.

POMEROY and WERNICK, JJ., did not sit.

All Justices concurring.

---

3. It is unnecessary for the purposes of this case to determine if delegation of approval authority to the Planning Board in the case of a "police power" ordinance was proper. When the reference ordinance was passed, the Town of Windham had the power to establish a planning board under 30 M.R.S.A. § 4952, the duties of which were to "prepare, adopt and may amend a comprehensive plan containing its recommendations for development of the municipality." Whether a planning board could act on a case by case basis, query.